## BARBEE et al. v. LUNDY et al. (No. 7728.)

(Court of Civil Appeals of Texas. Galveston.
May 1, 1919. Rehearing Denied
May 15, 1919.)

1. HOMESTEAD ⬥31 — ADDITION TO RURAL
HOMESTEAD — PURCHASE OF ADDITIONAL
LAND—INTENT AND OCCUPANCY.

Where owners of rural homestead purchased
adjoining land with intention of making it part
of homestead, and where the two tracts comprised less than 200 acres, the land so purchased became a part of the homestead at time of
purchase, though owners at such time were not
living upon homestead.

2. HOMESTEAD ⬥57(3)—RURAL HOMESTEAD—
PURCHASE OF ADDITIONAL LAND—INTENT—
SUFFICIENCY OF EVIDENCE.

Evidence *held* not to support finding that
owners of rural homestead who purchased adjoining land did not intend to make purchased
land a part of the homestead.

3. MORTGAGES ⬥497(2)—CONCLUSIVENESS OF
MORTGAGE FORECLOSURE—FAILURE TO MAKE
WIFE PARTY—HOMESTEAD CLAIM.

Judgment foreclosing mortgage, in action
against husband mortgagor, is not res adjudicata against wife who was not made a party
to the suit, and in no way affects her right to
assert her homestead claim to the land.

Appeal from District Court, Houston County; John S. Prince, Judge.

Action by T. L. Lundy against H. M. Barbee and another, in which named defendant
asks that the Texas Moline Plow Company be
made a party, and in which D. E. Barbee intervenes. Judgment for plaintiff and the
Texas Plow Company, and defendants and
intervener appeal. Reversed and rendered.

Moore & Ellis and Adams & Young, all of
Crockett, for appellants.

Nunn & Nunn, of Crockett, for appellees.

PLEASANTS, C. J. This is an action of
trespass to try title brought by the appellee
Lundy against appellants H. M. Barbee and
David Griffin. The land in controversy is a
tract of 32.2 acres on the James Neville
League in Houston county.

The defendant Barbee, in addition to a
general and several special exceptions, a general denial, and plea of not guilty, specially
pleaded, in substance:

That some time during the year 1913 he executed a mortgage upon the 32.2 acres of land
to secure an indebtedness due by him to the
Texas Moline Plow Company; that at the time
said mortgage was executed this land was a
part of defendant's homestead, and he so informed the agent of said company, who induced him
to execute the mortgage, and it was agreed between said agent and the defendant that vendor's lien notes owned by defendant would be
thereafter given by him as security for his indebtedness in lieu of the mortgage which would
then be canceled.

"That in pursuance of such agreement this
defendant did within the time so agreed upon
between himself and said plow company deliver
to the said Texas Moline Plow Company certain
vendor's lien notes of value largely in excess
of the land so attempted to be mortgaged herein, and demanded a cancellation and release of
the mortgage or lien so given on the said land.

"That thereafter, about June, 1915, the said
Texas Moline Plow Company sued this defendant in the district court at Dallas, Tex., for
foreclosure of the said attempted lien on the
said land, and on the 7th day of September,
1915, this defendant, by his attorneys, filed answer in such suit, denying plaintiff's right of
foreclosure against said land, and specially
pleading that the said H. M. Barbee had theretofore been duly adjudged a bankrupt in the
United States District Court for the Eastern
District of Texas, at Tyler, Tex., wherein he,
H. M. Barbee, had claimed the land in controversy herein as his rural homestead. Thereupon
it was agreed by and between the attorney for
the said Texas Moline Plow Company and the
attorney for this defendant that the cause so
pending in the district court of Dallas county,
Tex., of said Moline Plow Company against
this defendant should abide the decision of the
court in bankruptcy, and be governed therein
and should not be further heard or tried until
after such cause had been settled in the said
court of bankruptcy."

It is then averred that in October, 1915,
the court in which said bankruptcy proceeding was pending set aside to defendant as the
homestead of himself and family the tract of

185 acres of land theretofore claimed and occupied by them as their homestead, which said tract includes the 32.2 acres in controversy in this suit; that the Moline Plow Company was present in said court at the time and contested defendant's homestead claim to the land; that after said judgment was rendered defendant, believing that said company would keep its agreement in regard to disposition of the suit for foreclosure pending in the district court of Dallas county, gave no further attention thereto, but said company, in violation of its agreement and without this defendant's knowledge, procured the rendition of a judgment in the Dallas court foreclosing its alleged lien upon the land; that defendant did not learn of the rendition of said judgment until about a year thereafter, when an order of sale was issued thereon and his land levied upon and advertised for sale thereunder.

It is further averred that said judgment foreclosing the pretended lien upon the land and ordering the sale thereof, having been so obtained by fraud and misrepresentations, was therefore void, and the sale of the defendant's land thereunder to plaintiff was also void; that plaintiff was notified by defendant before he purchased the land at said sale that the land was a part of defendant's homestead and had been set apart to him as such by the decree of the bankruptcy court before mentioned.

"Further defendant charges that at the time such notice was given to the plaintiff at the time he was preparing to bid on such land at the time of the sheriff's sale thereof, that the agent of the said Texas Moline Plow Company insisted to the plaintiff to purchase such land, that the Texas Moline Plow Company would stand by its title, and defend the plaintiff in his right and title to the said land, in case he should be the purchaser, and thereby promised to defend such title, and this defendant says the Texas Moline Plow Company, residing in Dallas county, Tex., are the real parties at interest in this said suit, and are necessary parties herein, and he respectfully prays that citation issue to the said company, and that it be made parties herein, and that proof be heard, and that upon hearing the said judgment so rendered in the district court of Dallas county, Tex., attempting to foreclose any lien upon plaintiff's land, as herein shown, be held void and of no force and effect, but the same be held for naught, as having been obtained through fraud of its own, and against all fair dealing and equity, and that the plaintiff, in case he so desires, have his remedy against the said Texas Moline Plow Company for the purchase price of the said land, and that the said land herein sued for be declared to be a part of the homestead of this defendant, he being a married man, the head of a family, and residing thereon with his family, and making his living by farming, and for special and general relief, both in law and in equity."

The defendant David Griffin, who was a tenant upon the land under the defendant Barbee, answered by general demurrer, general denial, and plea of not guilty.

Mrs. D. E. Barbee, wife of defendant H. M. Barbee, intervened in the suit, claiming the land as a part of her homestead. Her plea in intervention, after fully alleging facts showing that the land was, at the time of the execution of the mortgage by H. M. Barbee, for some time prior thereto, and continuously since said time, a part of the homestead of herself and husband, alleges that she had no knowledge of the execution of said mortgage until she went before the bankruptcy court in the fall of 1915 for the purpose of asserting her homestead rights in said land.

The Texas Moline Plow Company answered by exception to the answer of defendant Barbee on the ground that said answer does not allege facts sufficient to show jurisdiction of the district court of Houston county to hear and determine the matters charged against it by said answer. In event said exception was overruled it specially denied all of the allegations of fraud and misrepresentation contained in defendant Barbee's answer, and pleaded the judgment of the district court of Dallas county as res adjudicata of defendant's homestead claim.

By supplemental petition the plaintiff excepted to the answer of the defendant Barbee and adopted the answer of the Texas Moline Plow Company "in so far as the same is applicable to the interest of the plaintiff and the issues between him and the defendants." By alternative plea he asked recovery against the plow company for the amount paid by him for the land in event the sale should be held void.

The cause was tried in the court below without a jury, and judgment rendered in favor of plaintiff and the Texas Moline Plow Company sustaining the exceptions to the answer of defendant Barbee and adjudging that plaintiff recover of the defendants H. M. Barbee and David Griffin and the intervener, D. E. Barbee, the title and possession of the land and the rents accrued thereon as claimed by plaintiff, and that the Texas Moline Plow Company go hence without day and recover of the defendant Barbee all costs incurred by said company. From this judgment the defendants H. M. Barbee and David Griffin and the intervener, D. E. Barbee, prosecute this appeal.

At the request of appellants the trial court filed the following findings of fact and conclusions of law:

"I find that H. M. Barbee and his wife occupied a tract of land as their homestead from the date of their marriage on the ——— day of ——— until 1908, when they moved to Lovelady. This land was H. M. Barbee's separate property, and thought to be 200 acres, but a resurvey disclosed that it contained only 187 acres, 37 acres of which was lost in a lawsuit, leaving

the homestead to consist of 150 acres, adjoining the 34 acres in controversy in this suit.

"I find that defendant Barbee and his wife, intervener, purchased in Lovelady a lot with dwelling house, which they occupied with their family from the date of its purchase, on the ―― day of ―― until the ―― day of ――, but that they never intended this to be their permanent home, they never paid it out, but finally deeded it back for the purchase money. Defendant Barbee purchased the land in controversy in 1911, and in the year 1913 he mortgaged the same to Texas Moline Plow Company. In 1914 he sold the same to E. W. McCullor, his wife not joining in this deed, and McCullor conveyed the land on the ―― day of ―――― to intervener, in consideration of the cancellation of the purchase-money notes executed by McCullor to H. M. Barbee.

"I find that the 150 acres of land was always the homestead of defendant and intervener, and that, while they lived for several years in Lovelady, it was always their intention to return to said home, and that on the ―― day of ―――― they did return to said 150 acres, and it is now their homestead.

"I find that, when defendant purchased the land in controversy, it was his intention to use it as a part of his homestead when he should finally return to the 150 acres, and since his return it has been a part of the homestead.

"I further find that defendant and intervener never considered this as a part of their homestead, or used it as such, till their return to the home.

"I conclude that the facts are not sufficient to impress the land in controversy with the homestead right of defendant and intervener, regardless of what their intentions may have been.

"I further conclude that the execution sale to plaintiff passed title, and the plaintiff is entitled to recover the land in controversy."

The court, at the request of defendant and intervener, made the following additional findings:

"(1) Intervener, Mrs. Barbee, was not a party to the suit in Dallas by the Moline Plow Company against H. M. Barbee, and did not have knowledge of the pendency of said suit until after the issuance of the execution introduced in evidence in this suit.

"(2) The land in controversy in this suit adjoins the original homestead tract of defendant and intervener, and a small part of the yard, in one corner of the yard, is on the tract in controversy.

"(3) The defendant and intervener kept their milk cows on the homestead place during their residence in Lovelady, and milked them daily, bringing the milk to their residence in Lovelady. And during all the time that they lived in Lovelady they used the rents and the crop from the cultivated land on the homestead for the use and support of their family."

[1] We think these findings of fact and the undisputed evidence show that the land in controversy was a part of the homestead of the intervener and her husband at the time the latter executed the mortgage under which, through foreclosure proceedings, the plaintiff claims title. None of the trial court's fact findings were excepted to by appellees, and no assignment is presented by them complaining of any of these findings.

The court having found that the 150 acres upon which Barbee and wife first established their home has always been their homestead, and that the land in controversy, which adjoins the 150-acre tract, was purchased with the intention of making it a part of the homestead, the two tracts comprising less than 200 acres, we cannot see upon what theory it can be held that the 32.2 acres has not been a part of the homestead ever since its purchase. It has been expressly held by our Supreme Court that, when the owner of a rural homestead of less than 200 acres buys land adjoining his homestead for the purpose and with the intention of making it a part of the homestead, the land so purchased becomes a part of the homestead by the mere intent of the purchaser without its being inclosed or any improvements being placed thereon. Crockett v. Templeton, 65 Tex. 134; Luhn v. Stone, 65 Tex. 441.

The fact that Barbee and wife were not living on their homestead at the time they purchased the 32.2 acres and had not returned to and resumed its occupancy at the time Barbee executed the mortgage on the small tract cannot affect the question of whether the 32.2 acres was a part of their homestead at the time the mortgage was executed. To hold otherwise would be to deny to the owner of a homestead who had temporarily ceased to occupy it as such the right to add to the homestead additional land without inclosing or improving the land so added. We cannot believe such restrictions upon the right to acquire a homestead containing the number of acres fixed by the Constitution can be sustained in reason or by authority.

[2] The finding of the trial court that the defendant and intervener never considered the 32.2 acres a part of their homestead or used it as such until their return to the home is assailed by appellant upon the ground that it is without support in the evidence. We think the assignment complaining of this finding should be sustained. The undisputed evidence shows that Barbee and wife at the time the land was purchased intended it as a part of their homestead, and that Barbee informed the agent of the Moline Plow Company at the time he executed the mortgage that the land was a part of his homestead. There is no evidence that Mrs. Barbee ever changed this intention as to making the land a part of the homestead or ever considered it otherwise than as a part of the homestead. The only evidence which tends in the least to indicate that Barbee ever ceased to regard the land as a part of his homestead is the fact that after he executed the mortgage and shortly before his bankruptcy he conveyed it to E. W. McCullor without his wife joining in the deed. The evidence does not show.

that Mrs. Barbee knew anything about this conveyance. We agree with counsel for appellee that the evidence justifies the conclusion that this conveyance was made for the purpose of preventing Barbee's creditors from subjecting or attempting to subject the land to the payment of his debts. No payment was made on the land by McCullor, and after the bankruptcy proceedings he reconveyed to Barbee in consideration of the cancellation of the notes given by him as consideration of the conveyance to him. We think this evidence merely shows that Barbee may have doubted whether he could hold the land as a part of his homestead, and that this doubt on his part in no way affects the question of whether the land upon the other undisputed facts found by the court was a part of appellants' homestead.

[3] Mrs. Barbee not having been a party to the suit in which the foreclosure judgment was rendered, such judgment is not res adjudicata as to her, and in no way affects her right to assert her homestead claim to the land. In suits to foreclose a lien upon a homestead, unless the lien is one which could not be defeated by the plea of homestead, the wife must be made a party in order to make the judgment binding upon her.

Having reached the conclusion that the undisputed evidence and the facts found by the trial court show that the land in controversy was the homestead of appellants Barbee at the time the mortgage was executed, and that Mrs. Barbee is not estopped by the judgment of foreclosure against her husband, it is unnecessary for us to determine the question of whether the trial court erred in sustaining the exceptions to the answer of defendant Barbee attacking said judgment on the ground of fraud and misrepresentations.

For the reasons indicated, the judgment of the court below is reversed, and judgment here rendered for appellants.

Reversed and rendered.